# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

STEPHANIE MCEWEN,        )
      Plaintiff,         )
                       )          Civil Action No. 3:06-cv-00319
v.                    )          Judge Nixon/Brown
                       )
MICHAEL ASTRUE,       )
Commissioner of Social Security,   )
      Defendant.       )

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI), as provided under Title II of the Social Security Act as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record. (Docket Entry No. 32). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed her application for SSI on January 10, 2002, alleging that she became disabled and unable to work on October 1, 1997. (Tr. 122-128).[1] Plaintiff alleged disability due to headaches/migraines, chronic sinus problems, abdominal pain, back pain, depression, anxiety,

---

[1]Plaintiff previously filed several applications for SSI in 1998, 1999 and 2001. All of these previous applications were denied, the last finalized on June 11, 2001. (Tr. 23, 1081,1281, 1284,1291).

1

fatigue, an enlarged liver, and swelling of the hands and feet. (Tr. 99, 134-145, 172-177). Plaintiff's application was denied initially and upon reconsideration. (Tr. 98-109). Plaintiff then filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 110). On August 18, 2004, a hearing was held. (Tr. 46-97). Plaintiff, two friends of the Plaintiff testifying as to her daily activities, and a vocational expert, Ms. Jane Brenton, testified. (Tr. 46-97). On June 24, 2005, the ALJ issued a denial of benefits. (Tr. 20-35).

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 10, 2002.

2. The claimant's minimal L4-5 and L5-S1 degenerative changes, sinus headaches related to chronic sinusitis and rhinitis, and depression are considered "severe" based on the requirements in the regulations 20 CFR § 416.920. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

4. The claimant has the residual functional capacity as described above.

5. The claimant is unable to perform her past relevant work. (20 CFR § 416.965).

6. The claimant is a "younger individual." (20 CFR § 416.963).

7. The claimant has a tenth grade education. (20 CFR § 416.964).

8. Transferability of skills is not an issue in this case. (20 CFR § 416.968).

9. Based upon the limitations above, and considering her age, education, and work experience, the claimant can perform the jobs identified above using medical-vocational rule 202.17 as a framework for decision-making.

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR § 416.920(g)).

On June 29, 2005, Plaintiff sought review from the Appeals Council. (Tr. 19). On February

2

6, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby rendering that decision the final decision of the Commissioner. (Tr. 7-9). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

The record in this case now consists of approximately 1,463 pages. In spite of the complexity of the Plaintiff's medical history, neither Plaintiff nor Defendant found it necessary to give a detailed, chronological review of the record. Plaintiff condensed her statement of facts into a page and a half. (Docket Entry 33, Page 6-8). Defendant simply adopts the facts as presented by the ALJ.[2] (Docket Entry 36). Having thoroughly examined the entire record, the Magistrate Judge will reference the necessary facts on each statement of error, rather than drafting an entire review of the record. However, the Magistrate Judge strongly suggests that, in the future, the parties put forth a more detailed statement of the facts, referencing the specific transcript pages, for use by the Court.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support

_____

[2]While the ALJ did compose a comprehensive statement of facts, the Defendant should nonetheless create a statement of facts which, at a minimum, highlight those facts relevant to the alleged statements of error.

3

the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

## B. Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)     If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2)     If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not

4

disabled.

(3)     If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)     Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

        The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423 (d)(2)(B).

## C.   Plaintiff's Statement of Errors

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. (Tr. 34). At step two, the ALJ determined that Plaintiff had severe impairments. (Tr. 34). At step three, the ALJ determined that Plaintiff's impairments were not of a severity to meet or equal any of the listed impairments. (Tr. 34). At step four, the ALJ found that while Plaintiff had the RFC to perform a limited range of light work, Plaintiff could not return to any of her past relevant work activities. (Tr. 33-34). At step five, the ALJ found that Plaintiff was able to perform other jobs that existed in substantial numbers in the general economy, relying upon the VE's testimony. (Tr. 34-35). As such, the ALJ found that Plaintiff was not disabled within the meaning of the Act during the relevant period. (Tr. 34-35).

6

Plaintiff alleges fifteen state of errors in the ALJ's decision.[4] The Magistrate Judge will address each in turn.

First, Plaintiff alleges that the ALJ improperly relied upon VE testimony that Plaintiff could perform other work that exists in significant numbers in the economy. The ALJ found that Plaintiff retained the RFC to perform a limited range of light work activities, including lifting and carrying twenty pounds occasionally and ten pounds frequently, standing or walking for six hours total in an eight-hour workday or sitting for six hours total in an eight-hour workday, all with a sit/stand at will option, and with no climbing. (Tr. 33). Further, the ALJ found that Plaintiff can understand, remember and carry out simple instructions and tasks but not detailed or complex instructions, has some but not substantial difficulty in concentration, persistence and pace for simple tasks, cannot deal with the general public on a sustained basis, will work best in situations where she does not have to work in large groups or deal with large numbers of people, and will have some but not substantial difficulty with criticism from other and with adapting to changes. (Tr. 33). Based upon this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a hotel housekeeper (medium unskilled work) but that someone with Plaintiff's age, education, past relevant work experience, and RFC could perform the following positions based upon the VE's testimony: companion (1,400 in Tennessee), assembler (4,800 in Tennessee), and inspector (1,300 in Tennessee). (Tr. 34).

---

[4]The Magistrate Judge notes, however, that Plaintiff did not support eight of the fifteen statements of error with applicable facts and law. Rather, Plaintiff simply submits one bolded sentence of what the alleged statement of error is. (Docket Entry 33, Pages 13 and 22). The Magistrate Judge would recommend to Plaintiff's counsel that specific evidence to support each statement of error should be included in the future. If there is no specific evidence available, the error should not be alleged in the first place. The procedure of listing excessive statements of error detracts from the stronger statements and prolongs the review of the record.

7

Plaintiff argues that the VE never testified that an individual with the RFC limitations set forth by the ALJ in his decision could perform other work. Specifically, Plaintiff argues that the VE was never asked a hypothetical with both physical (exertional) and mental (non-exertional) limitations, a sit/stand option at will, and a limitation of no climbing. (Docket Entry 33, Page 9). Defendant responds that the ALJ properly relied on VE testimony, having asked at least nine hypothetical questions involving all of these factors. Defendant further argues that the ALJ first asked an exertional hypothetical, followed by a series of non-exertional hypothetical and their effect on the first hypothetical. Defendant asserts that this is sufficient for the ALJ to rely on the VE's testimony as to what other work is available to the Plaintiff. (Docket Entry 36, Page 6).

The Magistrate Judge has reviewed the transcript of the hearing several times on this issue. (Tr. 82-95). While it would most assuredly be easier if the ALJ had posed one condensed hypothetical to the VE, the Magistrate Judge understands that in practice, this is not practical and limitations are usually presented in a series of hypothetical at the hearing. In this case, the ALJ did just that, posing a series of hypothetical which covered all of the limitations listed in the RFC. Based on these hypothetical, the VE testified that Plaintiff would be capable maintaining work as a companion, assembler, and inspector. (Tr. 89).

To be more specific, the ALJ asked the VE what work a person could do who could lift 30 pounds frequently, stand and/or walk six to seven hours a day, and/or sit seven hours a day. The VE classified this as light to medium work. (Tr. 84). The ALJ then further reduced the limitations to lifting 20 pounds occasionally and 10 pounds frequently as well as reducing the standing, walking and sitting time to six hours per workday. The VE responded by narrowing the available work to

8

solely light work.  (Tr. 84).  The ALJ then added a sit/stand option[5] and a restriction on unprotected

heights.  The VE maintained the light work classification, testifying that there would be cashier,

companion, and general office clerk positions available.  (Tr. 85).  The ALJ then turned to non-

exertional impairments.  Specifically, the ALJ restricted the hypothetical to a person who could

carry out only simple instructions and tasks, had some but not substantial difficulty with

concentration, persistence and pace for simple tasks, could not deal with the general public or with

large numbers of people, and who would have some but not substantial difficulty with criticism and

adapting to change.  (Tr. 85-86).  The VE testified that these restrictions would eliminate the cashier

and general office clerk positions because of the restriction on working with the public but would

leave the companion positions available.  (Tr. 86).  The ALJ, after a series of hypothetical dealing

with absenteeism, then asked the VE whether a person who was precluded from work as a cashier

and general office clerk positions, not because of any physical limitations but because of the

difficulty in working with the public, would have any other positions would be available.  (Tr. 89).

The VE testified that there would be assembly type positions *at the light level*[6] numbering 4,800 and

inspector positions, numbering 1,300.  (Tr. 89).  As such, the VE did testify that an individual with

---

[5]The ALJ stated, "Well, suppose this person needs to change position because of a back disorder.  So, I'm going to add a sit/stand option."  (Tr. 84).  The Plaintiff takes note that the language "at will" was never included and, therefore, the ALJ could not rely on the VE's testimony without this language.  However, for reasons discussed when addressing the seventh statement of error, the Magistrate Judge finds this to be an unfounded argument.

[6]Plaintiff argues that the ALJ did not impose any exertional limitations in this portion of the hypothetical.  However, it is clear from both the VE's response limiting the available positions to light level assembly positions as well as the context of the question itself, i.e. limiting the hypothetical to only light exertional positions, that the previous exertional limitations were taken into account when the VE determined the positions available.

9

all of the RFC limitations, both exertional and non-exertional, as set forth by the ALJ in his decision could perform these three positions. Therefore, substantial evidence supports the ALJ's determination on this issue.

Secondly, Plaintiff argues that the ALJ violated Social Security Ruling (SSR) 00-4p and Hearings, Appeals and Litigation Law Manual (Hallex) I-2-6-74[7], alleging that the ALJ did not address whether there were any conflicts between the occupational evidence she provided and the information contained in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO). SSR 00-4p and Hallex I-2-6-74(E) require any adjudicator, prior to relying on VE testimony to support a disability determination or decision, to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by" the VE and the information in the DOT and to "explain in the determination or decision how any conflict that has been identified was resolved."

After review of the record, the Magistrate Judge finds that the ALJ did not, in fact, ask whether there were any discrepancies between the VE's testimony and the DOT. However, as the Plaintiff has provided no argument that there are any such discrepancies, the Magistrate Judge finds that this argument does not affect the outcome of the ALJ's decision. Plaintiff's blanket assertion that the ALJ failed to ask about any discrepancies is insufficient without alleging that there are any discrepancies. Therefore, this error is not grounds for remand.

Plaintiff next argues that the ALJ could not properly conclude that Plaintiff could perform jobs existing in significant numbers in the national economy as the VE did not testify how many jobs

_____

[7]While not stated by the Plaintiff, the Magistrate Judge assumes the Plaintiff is referring to a violation of Section E, entitled "Conflicts with the Dictionary of Occupational Titles."

existed in the national economy. Plaintiff cites no law to support her position. As noted by Defendant, 42 U.S.C. § 1382c(a)(3)(B) of the Act provides that what constitutes "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." The VE clearly identified jobs and numbers of jobs within Tennessee which the Plaintiff could perform. Therefore, the Magistrate Judge finds Plaintiff's argument is wholly without merit.

Plaintiff's fourth statement of error alleges that the ALJ did not make a finding whether the number of companion, assembly, and inspector jobs is considered a "significant" number of jobs in Tennessee. Plaintiff argues that this means the ALJ has not proven that Plaintiff can perform other work. Again, the Plaintiff cites absolutely no law to support her argument. The Magistrate Judge again finds the Plaintiff's argument is wholly without merit. The ALJ determined that there were a total of 7,500 jobs in Tennessee that the Plaintiff could perform and thus found her not disabled. There is no other conclusion but to find that the ALJ found 7,500 to be significant number of positions. Further, although not argued by the Plaintiff, 7,500 identified positions is easily considered to be a "significant" number of jobs. See *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988); See also *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074 (5th Cir. 1987).

Plaintiff next two statement of errors are intertwined. Therefore, the Magistrate Judge will address them together. Plaintiff first argues that the VE's testimony does not support the ALJ's denial of benefits as five DDS consultants found that Plaintiff's ability to complete a normal workday and work week without interruptions was "moderately limited" given Plaintiff's mental limitations. Plaintiff argues that as the VE testified that occasional absenteeism, defined as absenteeism up to one-third of each month, would preclude all employment, the ALJ's ruling is not

11

supported by substantial evidence because "moderate limitation" would result in occasional absenteeism. Specifically, Plaintiff cites to a hypothetical posed to the VE wherein that ALJ asked whether a person who could sustain attention and concentration for low-level detailed instructions, could complete a work week, and maintain attendance with no more than occasional difficulty could sustain employment. (Tr. 88). The VE testified that if the word "occasional" was defined as meaning to up to one third of the time then this would preclude all employment. (Tr. 88). Along these lines, Plaintiff next argues that Plaintiff's medical conditions themselves would preclude sustained work given the necessary absenteeism needed for Plaintiff to receive treatment.

The Magistrate Judge has reviewed the record and finds that substantial evidence supports the ALJ's decision. It is clear that all five DDS consultants identified by Plaintiff did check the box on the standard form indicating that Plaintiff's ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was "moderately limited."[8] (Tr. 422-424, 661-663, 1267-1269, 1429-1431, and 1461-1463). However, Plaintiff's argument that the moderate limitation designation automatically necessitates a determination of disabled is unreasonable. The standard forms are meant to be reviewed in their entirety. Upon reviewing the written comments of several of these same DDS consultants who imposed the limited designation, it is clear that, in their opinion, the Plaintiff could in fact complete a work week. For example, Dr. Frank Edwards specifically stated that Plaintiff "can complete a work week, maintain attendance, with no more than occasional difficulty." (Tr. 1431). While Plaintiff attempts to equate Dr. Edwards use of the word

---

[8]The categories listed on the form are, in order of increasing severity, as follows: not significantly limited, moderately limited, and markedly limited. (Tr. 661). Also listed are two additional options: no evidence of limitation in this category or not ratable on available evidence.

12

"occasional" with the definition of the word "occasional" given by the VE, it is clear from the context of it's use, as well as the remainder of his comments, that Dr. Edwards did not mean that Plaintiff would be unable to work one third of each month. Rather, the wording and the context of the statement demonstrate that Dr. Edwards opined that Plaintiff could regularly complete a full work week. (Tr. 1431). Another example is Dr. Tommie Slayden, who, in a detailed list of Plaintiff's limitations including issues with complex instructions, depressive symptoms, dealing with the general public, adapting to changes and criticism, did not find that Plaintiff would be unable to complete a workweek. In fact, Dr. Slayden specifically found that, "There are no other significant limitations due to claimant's mental impairments." (Tr. 658, 659, 663). Further, Dr. Slayden contacted Plaintiff's treating physician, Dr. Julie Dunn, who reported that she sees the Plaintiff very frequently and has never noted the claimant to be severely depressed or incapable of working due to depression." (Tr. 658). Based on the above, it is clear the ALJ's decision is supported by substantial evidence.

Further, in regards to absenteeism to receive medical treatment, Plaintiff has failed to provide evidence that this would be prohibitive of employment. To support her argument, Plaintiff cites to a line of questioning wherein the VE testified that Plaintiff's medical history, absent any vacation time, "could conceivably be prohibitive of gainful employment on a consistent basis during that period of time" if "it necessitated her being absent more than two days a month." (Tr. 91-95). However, contrary to Plaintiff's argument that this was a definitive statement by the VE that Plaintiff's medical treatment history would preclude sustained work, the VE in fact testified that she was not familiar enough with the number of Plaintiff's medical visits to give an opinion about whether they would have caused two or more absences per month. (Tr. 92). While the hypothetical

13

posed by Plaintiff's attorney to the VE included a 10 day to two week convalescence after each of Plaintiff's multiple surgeries, there is no indication in the record as to actual recovery time after each surgery nor has Plaintiff cited any evidence which demonstrates actual recovery time. Further, while the Plaintiff does have an extensive history of surgeries and treatment as recapped by Plaintiff (Docket Entry 39, Page 14), Plaintiff has not cited to any evidence and/or opinion in the record that these multiple surgeries and treatment visits would preclude employment. As such, the ALJ properly relied upon the DDS opinions as well as Plaintiff's treating physicians, as described above, that Plaintiff could complete a full work week and/or had no conditions which prohibited employment as these opinions included a review of the Plaintiff's treatment history, including her numerous surgeries.

The Magistrate Judge further notes the Defendant's argument that Plaintiff has engaged in designated "drug seeking" behavior and that Plaintiff did not need to go the doctor as often as she did. (Tr. 705-706). Plaintiff takes offense at this designation, noting that the only evidence of this alleged behavior is one visit to an emergency room in January 2003. However, the fact remains that the Plaintiff was, in fact, specifically designated to be engaging in drug seeking behavior respecting complaints of low back pain. (Tr. 705-706). Further, in January 2005, Plaintiff was again denied pain medication and referred to the pain clinic after complaints of back pain. (Tr. 947). Regardless, whether noted one time or several times, this designation does appear in the record and is entitled to be given some weight by the ALJ. Additionally, the ALJ noted that while the Plaintiff reported to her medical treating sources in February 2002 that she had three bulging discs in her back and associated pain and numbness in her right hip to the knee, MRIs in 2001 and 2004 revealed only minimal deficiencies or were, in fact, normal. (Tr. 596, 679-682, 780-787). Further, in January

14

2004, Plaintiff presented to the ER complaining about pain in the base of her neck and shoulders after she was injured playing on a trampoline with her children. (Tr. 959). Additionally, while the ALJ noted that while Plaintiff's treating physician noted in December 2004 and January 2005 the presence of an operable lesion at the L5-S1 level shown by discogram and post-discogram CT scan (Tr. 924-932), there are no records which establish that the planned back surgery was ever performed. The records do indicate that Plaintiff continued to take pain medications.

There is also additional evidence that Plaintiff sought unnecessary treatment. On July 10, 2002, Plaintiff's treating physician, Dr. Thomas B. Taylor, opined, "After an exhaustive work up I can find no abnormalities related to her liver and certainly from my standpoint there is no recognizable disability that I can see. She may very well have a disability, but it is not related to any medical problem I have been treating her for." (Tr. 640). As such, given the above, there is objective medical evidence from which the ALJ could have found that Plaintiff was not suffering from disabling pain and that the Plaintiff sought unnecessary treatment.[9]

The Plaintiff's next alleged statement of error is that the ALJ, when questioning the VE added a sit/stand option but in the RFC in his opinion listed a sit/stand option *at will.* (Tr. 84, 33). Plaintiff argues that the "at will" designation means that Plaintiff could sit for up to 8 hours in an 8 hour workday at her option and would thus preclude Plaintiff from being capable of performing the majority of light jobs as such jobs require, by definition, standing and/or walking up to six hours of an eight hour day. To support her argument, Plaintiff cites SSR 83-12 which states that, "Unskilled types of jobs are particularly structures so that a person cannot ordinarily sit or stand at will." The

---

[9]For reasons discussed later in this Report and Recommendation, Plaintiff's daily activities also support the ALJ's decision that Plaintiff was not suffering from disabling pain. (See Page 18).

Magistrate Judge notes the next sentence of SSR 83-12 which states that, "In cases of unusual limitation of ability to sit or stand, a VE should be consulted to clarify the implications for the occupational base."

In the instant case, the ALJ, in accordance with SSR 83-12, properly relied upon the VE's testimony that Plaintiff, with an RFC including a sit/stand option as well as psychological limitations, could perform a number of jobs in the economy. (See Page 8-9 of this Report and Recommendation for more detail). Further, Plaintiff cites none, nor did the Magistrate Judge find any medical opinion, that the Plaintiff would be required to sit for 8 hours in an 8 hour workday. In fact, the medical opinions in the record establish that Plaintiff would be capable of standing and/or walking (with normal breaks) for a total of about 6 hours in an 8 hour workday as well as sitting (with normal breaks) for about 6 hours in an 8 hour workday. (Tr. 426, 1434). As such, there are no inconsistencies in the record between the VE's testimony and the record. Further, for reasons discussed directly above, the ALJ properly discounted Plaintiff's allegations of disabling pain. Therefore, there is sufficient evidence in the record to support the ALJ's finding that Plaintiff could perform a sufficient number of jobs in the economy with a sit/stand option at will.

The Plaintiff next argues that the ALJ relied on "substantially outdated mental assessments by one-time, non-examining consultants." (Docket Entry 33, Page 20). However, Plaintiff fails to cite a single mental assessment upon which the ALJ should have relied which contradicts these assessments. The Magistrate Judge can only assume that Plaintiff advances that the ALJ should have relied upon the report of examining psychologist, Dr. Judith Weiss, who opined in March 2002, after one consultative examination, that the Plaintiff's conditions meet listings 12.03 for Schizophrenic, paranoid and Other Psychotic Disorders and 12.04 for Affective Disorders due to marked mental

limitations in the areas of activities of daily living, social functioning, and maintaining concentration, persistence and pace (Tr. 445-449). The Magistrate Judge has reviewed Plaintiff's mental assessments and finds that the ALJ properly relied upon the opinions of Dr. Slayden and Dr. Dunn.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (1994). In *Young v. Secretary of H.H.S.*, 925 F.2d 146,150 (1990), the court held that the Secretary could properly reject the opinion of a treating psychiatrist not supported by medical findings in favor of the contrary opinion of a consulting psychologist.

Upon review of the record and as relied upon by the ALJ, DDS consulting physician Dr. Slayden opined that the Plaintiff appears to have a long history of chronic mild-to-moderate depression for which she has never sought treatment from a mental health professional, having received anti-depressant and anti-anxiety medication from her primary care physician, Dr. Dunn. (Tr. 660). Dr. Slayden further opined that Plaintiff's mental impairments resulted in only mild-to-moderate limitations in function. Additionally, having discussed Dr. Weiss' diagnosis with Plaintiff's treating physician, Dr. Dunn, Dr. Slayden found that Dr. Weiss' diagnosis did not comport with Plaintiff's past medical treatment as there was a complete absence of any treatment history near the level of severity suggested by Dr. Weiss. (Tr. 658). Further, Dr. Dunn, who had an established and

17

ongoing treatment history with the Plaintiff, reported that she sees the Plaintiff frequently and has never noted the Plaintiff to be severely depressed. (Tr. 658). Further, she has never seen the Plaintiff out of touch with reality in any way nor does she see the Plaintiff as incapable of working due to depression. (Tr. 658).

Further, the ALJ noted that Plaintiff's daily activities did not support a level of mental disorder as suggested by Dr. Weiss. The evidence of the record shows that Plaintiff is able to do a variety of daily activities. Plaintiff takes care of her personal needs, talks on the phone, cooks several meals for her family, takes care of her family's finances with the limited assistance of her arithmetic being checked by her mother in-law, washes dishes, watches television, drives her children to school, runs various errands, takes her children to the park, helps her children with their homework, and attend her son's baseball games. (Tr. 446-447). The Plaintiff argues that these daily activities do not support the ALJ's decision. However, they clearly demonstrate that Plaintiff was capable of taking care of both herself and her family with minimal assistance.

Given the report from Plaintiff's treating physician, Dr. Dunn, as well as the report of several consultative examiners, including Dr. Slayden, in addition to the reports of Plaintiff's daily activities, there is substantial evidence to support the ALJ's opinion that Plaintiff's mental impairments were not of disabling severity.

The Plaintiff's six remaining statements of error are not supported by any citations to either the law or the record. Rather, the Plaintiff has submitted one sentence allegations. Therefore, the Magistrate Judge will summarily address these statements of error.

Plaintiff argues that the ALJ did not consider all of the evidence but rather "cherry picked" evidence to deny Plaintiff's claim. The Magistrate Judge, having reviewed the entire 1,463 record,

finds this allegation to be without basis. The ALJ conducted a hearing and drafted a very complete opinion, having obviously reviewed the entire record. Further, for the reasons discussed above, the ALJ's opinion is supported by substantial evidence. As such, Plaintiff's allegation is unfounded.

Plaintiff next advances that the ALJ's credibility finding is not supported by substantial evidence and does not comport with "applicable regulations and rulings." Plaintiff does not state which regulations and rulings she is referring to and as such, the Magistrate Judge cannot address this portion of Plaintiff's statement of error other than to find that for reasons previously discussed, the ALJ afforded proper weight to the opinions of Dr. Dunn and Dr. Slayden as well Plaintiff's subjective complaints of pain.

Plaintiff next argues that the failure to find several of her ailments as "severe" is clear error as is the failure to consider the combined effect of Plaintiffs "severe" and "non-severe" ailments. However, at step two, the ALJ did find that Plaintiff's minimal L4-5 and L5-S1 degenerative changes, sinus headaches related to chronic sinusitis and rhinitis, and depression were considered "severe." The ALJ then continued the evaluation process and considered all of Plaintiff's medically determinable impairments, severe and not severe, at steps four and five. 20 C.F.R. § 416.945(a)(2). This is evidenced by the ALJ's very complete synopsis and analysis of Plaintiff's entire medical history. (Tr. 23-25). Additionally, for reasons previously discussed, the determined RFC is supported by substantial evidence. As such, Plaintiff's argument is without merit.

Next, Plaintiff again argues that the ALJ failed to afford the proper weight to Plaintiff's treating physicians "which combine to overwhelmingly establish [Plaintiff] to be chronically and severely ill and unable to sustain work performance at any level of exertion, not even sedentary." As previously noted, Plaintiff does not cite to any evidence in the record which demonstrates that any

of Plaintiff's treating physicians limited her to sedentary work or opined that Plaintiff was incapable

fo work. However, even if Plaintiff had supplied such evidence, for reasons previously discussed,

the ALJ's opinion afforded the proper weight to the opinions in the record. Therefore, substantial

evidence supports the ALJ's opinion.

Lastly, Plaintiff argues that the ALJ "de facto" reopened the initial denials of Plaintiff's

claims because the record indisputably establishes that new and material evidence was submitted.

However, the ALJ clearly stated in his opinion that, "Because there is no new and material evidence

or other basis for reopening the previous determinations, they are final, binding, and not subject to

further review as to the issue of disability during the previously adjudicated periods pursuant to 20

C.F.R. § 416.1457c1." (Tr. 23). The ALJ is required to consider all the evidence in the record when

determining Plaintiff's impairments. Considering the information contained in the previous

applications does not amount to a reopening of those cases. Plaintiff has not identified, nor has the

Magistrate Judge located, any law which states otherwise.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to

file any written objection to it with the District Court. Any party opposing said objections shall

have ten (10) days from receipt of any objections filed in which to file any responses to said

objections. Failure to file specific objections within ten (10) days of receipt of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc).

ENTERED this 6th day of May, 2008.

JOE B. BROWN
United States Magistrate Judge